IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIAS ADAMES, | : | |
|    Plaintiff, | : | |
| | : | |
|    V. | : | CIVIL ACTION NO. 21-CV-2855 |
| | : | |
| KEVIN PISTRO, *et al*, | : | |
|    Defendants. | : | |

**MEMORANDUM**

**TUCKER, J.**                                                                 **NOVEMBER 29, 2021**

Currently before the Court is an Amended Complaint filed by Elias Adames, a pretrial detainee incarcerated at FDC-Philadelphia ("FDCP"), raising *Bivens* claims[1] against Warden Kevin Pistro and a John Doe Health Service Administrator based on allegations that Adames contracted COVID-19 while incarcerated at FDCP. For the following reasons, the Court will dismiss the Amended Complaint.

**I.     FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

In his initial Complaint Adames alleged that he contracted COVID-19 due to the Defendants' negligence and that he only received Tylenol for his symptoms. In a July 9, 2021 Memorandum and Order, the Court granted Adames leave to proceed *in forma pauperis* and dismissed the Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). (ECF No. 5 & 6.) The Court concluded that, even assuming a *Bivens* remedy existed in this context against the named Defendants, Adames failed to allege facts establishing that he was subjected to unconstitutional punishment or treated with deliberate indifference, as is required to state a constitutional violation. (ECF No. 5 at 4.)

---

[1] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

1

Adames was given leave to file an amended complaint, which he did. Adames's Amended Complaint names the same Defendants as his initial Complaint — Warden Pistro and a John Doe Health Services Administrator. Adames alleges that the Defendants were aware of COVID-19 in the facility "but failed to take appropriate measures to assure [his] safety." (ECF No. 8 at 4.) Specifically, he alleges that Warden Pistro "is in charge of the total operation of the institution and he failed to properly remedy the situation when the COVID-19 pandemic was infested in FDC-Philadelphia." (*Id.* at 5.) The Health Services Administrator allegedly "failed to remedy the matter as well and [Adames] caught COVID-19." (*Id.*) Adames alleges that he experienced severe symptoms from his infection. (*Id.*) He seeks $12.5 million in compensatory damages and $12.5 million in punitive damages. (*Id.*)

Shortly before he filed his Amended Complaint, Adames submitted a letter to the Court, in which he alleges that he is not receiving medical treatment for pain, dizziness, chest pains, and shortness of breath. (ECF No 7 at 1.) The letter also explains that since Adames was infected with COVID-19, he regularly feels exhausted and experiences body aches, loss of breath, headaches, and pain. (*Id.*) Adames asserts that he complains every day but does not receive medical treatment. (*Id.*) He also claims that on July 15, 2021, he experienced dizziness and loss of breath and slipped from his bunk bed upon attempting to alert the correctional officers. (*Id.*)

II.     **STANDARD OF REVIEW**

Since Adames is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Adames is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

The Court understands Adames to be raising *Bivens* claims that he was subjected to unconstitutional punishment because he was infected with COVID-19 during his incarceration when there was an outbreak at the facility.[2] As explained in the Court's July 9, 2021 Memorandum, (ECF No. 5 at 2-4), since *Bivens* was decided in 1971, the Supreme Court "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses." *Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017). The Supreme Court has recognized an implied private action against federal officials in only three cases: (1) *Bivens* itself — a claim against FBI agents for handcuffing a man in his own home without a warrant under the Fourth Amendment; (2) a claim against a Congressman for firing his female secretary under the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) a claim against prison officials for failure to treat an inmate's asthma under the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980).[3] *See*

---

[2] The Eighth Amendment governs claims brought by convicted and sentenced inmates challenging their conditions of confinement, while the Due Process Clause of the Fifth Amendment governs claims brought by pretrial detainees in federal custody. *See Bistrian v. Levi*, 912 F.3d 79, 91 (3d Cir. 2018). Since it appears Adames was a pretrial detainee at the time of the relevant events, the Fifth Amendment, rather than the Eighth Amendment, applies.

[3] It is unclear whether the Supreme Court also acknowledged a *Bivens* remedy in the context of a prisoner's failure to protect claim arising out of prisoner on prisoner violence. *See Farmer v. Brennan*, 511 U.S. 825, 832-49 (1994); *Mammana v. Barben*, No. 20-2364, 2021 WL 2026847, at *3 n.5 (3d Cir. May 21, 2021); *Bistrian*, 912 F.3d at 90.

3

*Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020).  Because expanding *Bivens* is "a 'disfavored' judicial activity," *see Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017), a "rigorous inquiry . . . must be undertaken before implying a *Bivens* cause of action in a new context or against a new category of defendants." *Vanderklok*, 868 F.3d at 200; *see also Mammana*, 2021 WL 2026847, at *2 (stating that "while *Bivens* claims are disfavored, they do not automatically fail").  That inquiry involves determining whether the case presents a new context for a *Bivens* claim and, if so, asking whether "special factors counsel hesitation in expanding *Bivens*." *Mack v. Yost*, 968 F.3d 311, 320 (3d Cir. 2020); *see also Abbasi*, 137 S. Ct. at 1857-58.

Assuming, without deciding, that a *Bivens* remedy is available here, the Amended Complaint fails to state a plausible claim as pled.  To state a constitutional claim in this context, Adames must allege facts plausibly establishing that the Defendants confined him in conditions that amounted to punishment or that the Defendants were deliberately indifferent to his serious medical needs.  *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020).  "The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'"  *Id.* at 326 (quoting *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008)).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Additionally, "[b]ecause vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Adames's Amended Complaint fails to allege a constitutional violation for which the Defendants were responsible. He alleges that he contracted COVID-19 while incarcerated but does not allege any facts from which it could be inferred that the conditions in which he was confined were constitutionally deficient such that they amounted to punishment or that the Defendants were deliberately indifferent to his health. He alleges that the "COVID-19 pandemic was infested in FDC-Philadelphia," but does not provide any additional information about what the Defendants personally did or did not do regarding the conditions at FDCP that caused a constitutional violation. Rather, as in his initial Complaint, Adames appears to predominately base his claim on his allegation that he contracted COVID-19 while incarcerated at FDCP. As previously explained (ECF No. 5 at 4), his diagnosis alone is an insufficient basis upon which to establish a constitutional violation. *See Hope*, 972 F.3d at 330 (explaining that the constitution does not require the government to entirely eliminate the risk of contracting COVID-19 in a prison setting, stating "[plaintiffs] argue that the Government must eliminate *entirely* their risk of contracting COVID-19. That task is not the constitutional standard, however."). Additionally, the fact that the Defendants are identified as high-level prison officials does not adequately allege their personal involvement, whether on an individual or supervisory level. *See Argueta v. U.S. Immigr. & Customs Enf't*, 643 F.3d 60, 70 (3d Cir. 2011) (declining to address the scope of supervisory liability under *Bivens* when plaintiff failed to plead a plausible claim for supervisory liability); *see also Figueroa v. Pistro*, Civ. A. No. 21-0041, 2021 WL 601096, at *4 (E.D. Pa. Feb. 16, 2021) (dismissing *Bivens* claims for failure to allege personal involvement where "other than being identified as the Warden at the Philadelphia FDC, there is no other mention of Pistro in Figueroa's Complaint"). For these reasons, Adames's *Bivens* claims fail.

Adames's letter includes allegations that are not included in his Amended Complaint. Even if the Court were to consider these allegations part of Adames's Amended Complaint and

5

construe them as raising claims for deliberate indifference to his serious medical needs,[4] those claims would fail because nothing in Adames's letter suggests that Warden Pistro or the John Doe Health Services Administrator were deliberately indifferent to Adames's serious medical needs by denying him medical care. Indeed, the letter does not suggest that the Defendants were personally involved in these events at all. Accordingly, the letter does not suggest a basis for a constitutional claim against the named Defendants.

## IV.  CONCLUSION

For the reasons stated, the Court will dismiss Adames's Amended Complaint for failure to state a claim. Adames will be given one more opportunity to amend in the event he can allege sufficient facts against appropriate defendants to state a plausible claim for violation of his constitutional rights. An Order follows that provides further instruction as to amendment.

**BY THE COURT:**

/s/Petrese B. Tucker

**PETRESE B. TUCKER, J.**

---

[4] To state a claim in the context of medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 835. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).