# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIAS ADAMES,  :  Plaintiff,  :  :  V.  :  :  KEVIN PISTRO, *et al*,  :  Defendants.  : | CIVIL ACTION NO. 21-CV-2855 |

## MEMORANDUM

**TUCKER, J.**                                                      **JANUARY 28, 2022**

Currently before the Court is a Third Amended Complaint (TAC) filed by Elias Adames, a pretrial detainee incarcerated at FDC-Philadelphia ("FDCP"), raising *Bivens* claims[1] against Warden Kevin Pistro and a John Doe Health Service Administrator based on allegations that Adames contracted COVID-19 while incarcerated at FDCP. (ECF No. 16.) For the following reasons, the Court will dismiss the TAC.

## I.     FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

In his initial Complaint Adames alleged that he contracted COVID-19 due to the Defendants' negligence and that he only received Tylenol for his symptoms. In a July 9, 2021 Memorandum and Order, the Court granted Adames leave to proceed *in forma pauperis* and dismissed the Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). (ECF No. 5 & 6.) The Court concluded that, even assuming a *Bivens* remedy existed in this context against the named Defendants, Adames failed to allege facts establishing that he was subjected to unconstitutional punishment or treated with deliberate indifference, as is required to state a constitutional violation. *See Adames v. Pistro*, Civ. A. No. 21--2855, 2021 WL 2903064,

---

[1] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

at *2 (E.D. Pa. July 9, 2021) ("[Adames] alleges that he contracted COVID-19 while incarcerated but does not allege any facts from which it could be inferred that the conditions in which he was confined were constitutionally deficient.  His diagnosis alone is an insufficient basis upon which to establish a constitutional violation.").  The Court also concluded that Adames failed to adequately allege the Defendants' personal involvement in the claimed constitutional violations, "whether on an individual or supervisory level." *Id.*

Adames was given leave to file an amended complaint, which he did.  Adames's Amended Complaint named the same Defendants as his initial Complaint — Warden Pistro and a John Doe Health Services Administrator.  As with the initial Complaint, the Court concluded that even assuming *Bivens* provided a remedy in this context, Adames failed to state a plausible claim because "[h]e allege[d] that he contracted COVID-19 while incarcerated but [did] not allege any facts from which it could be inferred that the conditions in which he was confined were constitutionally deficient such that they amounted to punishment or that the Defendants were deliberately indifferent to his health." *Adames v. Pistro*, Civ. A. No. 21-2855, 2021 WL 5631772, at *2 (E.D. Pa. Nov. 29, 2021).  Adames also failed to allege how the Defendants were personally involved in the claimed constitutional violations such that they could be held liable. *Id.* at *2-*3.  The Court also addressed a letter that Adames submitted in which he indicated that that he "complains every day but does not receive medical treatment" for various conditions, and that he slipped from his bed and injured himself on July 21, 2021. *Id.* at *1.  The Court concluded that, even if it construed these allegations as deliberate indifference claims that were part of Adames's Amended Complaint, "those claims would fail because nothing in Adames's letter suggest[ed] that Warden Pistro or the John Doe Health Services Administrator were deliberately indifferent to Adames's serious medical needs by denying him medical care" or that they were "personally involved in these events at all." *Id.* at *3.  Adames was given "one more

opportunity to amend in the event he [could] allege sufficient facts against appropriate defendants to state a plausible claim for violation of his constitutional rights." *Id.*

Adames subsequently filed a Second Amended Complaint against Pistro and at least twelve other Defendants. (ECF No. 15 at 1-6.) The Second Amended Complaint also purported to raise claims on behalf of inmates other than Adames — even though those other inmates did not sign the pleading or seek leave to proceed *in forma pauperis* in this matter — and included allegations pertaining to those inmates.[2] (*Id.* at 3.) The Second Amended Complaint included allegations related to Adames's contraction of COVID-19 and the measures taken at FDCP to address COVID-19, but also included allegations related to other conditions and events.

Shortly thereafter, Adames filed his TAC, which superseded his Second Amended Complaint and is now the governing pleading in this matter.[3] The TAC again names Warden Pistro and a John Doe Health Services Administrator as Defendants, and alleges that the events giving rise to Adames's claims began in December 2020 but have been "ongoing." (ECF No. 16 at 2 & 5.) Adames alleges that these Defendants violated his constitutional rights because they

---

[2] The Second Amended Complaint reflected Adames's intention to pursue the matter as a "class action lawsuit," (ECF No. 15 at 39), even though prisoners who are proceeding *pro se* may not represent a class of inmates. *See Hagan v. Rogers*, 570 F.3d 146, 158-59 (3d Cir. 2009) ("[W]e do not question the District Court's conclusion that *pro se* litigants are generally not appropriate as class representatives."); *Lewis v. City of Trenton Police Dep't*, 175 F. App'x 552, 554 (3d Cir. 2006) (*per curiam*) ("Lewis, who is proceeding *pro se,* may not represent a putative class of prisoners.").

[3] An amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted). Accordingly, the Court will only address the allegations of the TAC in determining whether Adames has stated a plausible claim. *See Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) (explaining that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings").

were "aware" of COVID-19 but "failed to [take] the appropriate measures to assure my safety."

(*Id.* at 4.)  More specifically, he contends that:

> The Warden is in charge of the total operations at the institution and he failed to properly remedy the situation when the COVID-19 pandemic was infested in FDC-Philadelphia.  Also, Health Service Administrator Failed to Remedy the matter as well and I caught COVID-19.

(*Id.* at 5.)  Adames alleges that he suffered from "severe COVID-19 symptoms" and seeks $10 million in damages.  (*Id.*)

Adames attached two letters to the TAC, which provide additional allegations about the conditions at FDCP.  In one letter, he alleges that in late October 2020, the toilet in his cell overflowed with urine and feces and was "left for days and made the areas heavily contaminated."  (ECF No. 16 at 13.)  Adames alleges that, since this time, he has been suffering from rashes and problems with his throat "due to the polluted water we drink."  (*Id.*)  He claims that the medical team is "horrible in the way they attend to our medical needs" and that he suffered from COVID-19 while the facility was "on lockdown" and he was being fed only bread, peanut butter, and jelly.  (*Id.*)  Adames asserts that he now takes additional medications for his conditions and suffers from "headaches, pain in my bones, high blood pressure, a faster irregular heartbeat rate from anxiety, depression and breathing problems."  (*Id.*)

The second letter attached to the TAC is essentially identical to the letter that the Court addressed with the Amended Complaint.  (*Compare* ECF No. 7 *with* ECF No. 16 at 14.)  In that letter, Adames alleges that he was born with an irregular heartbeat and other unspecified health problems.  (*Id.* at 14.)  He indicates that since he contracted COVID-19 and in light of his congenital conditions, he requires unspecified medical treatment, but that although he complains

"every day" he has received "no medical treatment."[4] (*Id.*)  The only specific incident recounted in this letter is that on July 15, 2021, Adames felt dizzy and out of breath, causing him to fall from his top bunk bed and bruise his back.  (*Id.*)  He indicates he was "seen by someone who did nothing" but does not further describe the incident.  (*Id.*)  It is unclear what, if any, additional medical care Adames believes is required as a result of this fall.

## II.    STANDARD OF REVIEW

Since Adames is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the TAC if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).   "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678. As Adames is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  However, "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings."  *See Argentina*, 778 F. App'x at 175 n.3.

---

[4] This allegation appears to conflict with Adames's allegation in his other letter that he receives medications to treat various ailments.

## III.    DISCUSSION

The Court again understands Adames to be raising constitutional claims against Warden Pistro and the John Doe Health Services Administrator pursuant to *Bivens*.[5]  Since *Bivens* was decided in 1971, the Supreme Court "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses."  *Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017).  The Supreme Court has recognized an implied private action against federal officials in only four cases:  (1) *Bivens* itself, which recognized an implied cause of action for violation of the Fourth Amendment's right against unreasonable searches and seizures; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which recognized a claim for gender discrimination in the employment context under the Fifth Amendment's Due Process Clause; (3) *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a claim against prison officials for inadequate medical care in the prison context under the Eighth Amendment; and (4) *Farmer v. Brennan*, 511 U.S. 825 (1994), which concerned a claim under

---

[5] The Defendants are named in their individual and official capacities.  (ECF No. 16 at 2.)  Although *Bivens* provides a remedy against federal actors in limited circumstances, "[a]n action against [federal] government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."  *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (*per curiam*); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Ynfante v. United States*, Civ. A. No. 13-767, 2015 WL 631055, at *5 (M.D. Pa. Feb. 12, 2015) ("[A] *Bivens* claim can only be asserted against individual officials.").  Accordingly, the constitutional claims against the Defendants in their official capacities are in essence claims against the United States that must be dismissed on sovereign immunity grounds.  *See Brooks v. Bledsoe*, 682 F. App'x 164, 169 (3d Cir. 2017) (*per curiam*) ("To the extent that Brooks is suing the BOP employees in their official capacities, his claim fails as actions against prison officials in their official capacities are considered actions against the United States, and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."); *Bell v. Rossott*, 227 F. Supp. 2d 315, 320 (M.D. Pa. 2002) (dismissing claim against individual federal defendants sued in their official capacity because the claims are essentially made against the United States).

the Eighth Amendment against prison officials for failure to protect a prisoner from violence by another prisoner. *Shorter*, 12 F.4th at 371-373 ("*Farmer* made clear[] . . . that an Eighth Amendment *Bivens* remedy is available to a transgender prisoner who has been assaulted by a fellow inmate.").

Because expanding *Bivens* is "a 'disfavored' judicial activity," *see Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017), a "rigorous inquiry . . . must be undertaken before implying a *Bivens* cause of action in a new context or against a new category of defendants." *Vanderklok*, 868 F.3d at 200. That inquiry involves determining whether the case presents a new context for a *Bivens* claim that has not been recognized by the Supreme Court and, if so, asking whether "special factors counsel hesitation in expanding *Bivens*." *Mack v. Yost*, 968 F.3d 311, 320 (3d Cir. 2020); *see also Abbasi*, 137 S. Ct. at 1857-58. "Whether a *Bivens* claim exists in a particular context is 'antecedent to the other questions presented.'" *Bistrian v. Levi*, 912 F.3d 79, 88 (3d Cir. 2018) (quoting *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017)).

Where a *Bivens* remedy exists, a plaintiff must allege the personal involvement of each defendant to state a claim. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)); *see also Mark v. Patton*, 696 F. App'x 579, 582 (3d Cir. 2017) (relying on *Barkes* in

the *Bivens* context). "Second, 'a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316 (citation omitted). "Particularly after *Iqbal,* the connection between the supervisor's directions and the constitutional deprivation must be sufficient to 'demonstrate a "plausible nexus" or "affirmative link" between the [directions] and the specific deprivation of constitutional rights at issue.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000)). This link is established where the allegations of the complaint reflect that the supervisor gave directions that the supervisor knew or should have known would cause others to violate the plaintiff's constitutional rights. *Id.*

### A. Allegations Related to COVID-19 Response

As with his prior pleadings, the primary basis for Adames's claims against the named Defendants is that they failed to adequately respond to the pandemic and that he was infected with COVID-19 as a result.[6] Assuming, without deciding, that a *Bivens* remedy is available here, the TAC fails to state a plausible claim on this basis. To state a constitutional claim in the context of COVID-19, Adames must allege facts to support a plausible inference that the Defendants confined him in conditions that amounted to punishment or that the Defendants were deliberately indifferent to his serious medical needs. *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020). To meet this standard, the facts alleged must reflect that the challenged conditions were imposed "for the express purpose of punishment" or that the

---

[6] The Eighth Amendment governs claims brought by convicted and sentenced inmates challenging their conditions of confinement, while the Due Process Clause of the Fifth Amendment governs claims brought by pretrial detainees in federal custody. *See Bistrian*, 912 F.3d at 91. Since it appears Adames was a pretrial detainee at the time of the relevant events, the Fifth Amendment, rather than the Eighth or Fourteenth Amendment, applies.

"Government knew of *and disregarded* an excessive risk to their health and safety." *Id.* at 328-29 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)). "The context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and, in evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as constitutional rules "are not subject to mechanical application *in unfamiliar territory*." *Id.* at 330 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)) (emphasis in original). Thus, where the facility has taken concrete steps towards mitigating the medical effects of COVID-19 in a detention facility, a prisoner will fall "well short" of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus even though they cannot entirely "eliminate all risk" of contracting COVID, notwithstanding even serious preexisting medical conditions the prisoner may have. *Id.* at 330-31.

Adames's TAC again fails to allege a plausible constitutional violation based on the response to COVID-19 at FDCP or based on the fact that he contracted COVID-19. As with his prior pleadings, he alleges that he contracted COVID-19 while incarcerated but does not allege any facts from which it could be inferred that the conditions in which he was confined were constitutionally deficient such that they amounted to punishment or that the Defendants were deliberately indifferent to his health. As explained in the Court's prior Memoranda, Adames's diagnosis alone is an insufficient basis upon which to establish a constitutional violation. *See Hope*, 972 F.3d at 330 (explaining that the constitution does not require the government to entirely eliminate the risk of contracting COVID-19 in a prison setting, stating "[plaintiffs] argue that the Government must eliminate *entirely* their risk of contracting COVID-19. That task is not the constitutional standard, however."). His claims are based essentially on conclusory

allegations that the COVID-19 response at FDCP was not "appropriate." (ECF No. 16 at 4.) Much more is required to state a claim in this context.[7]

Additionally, Adames has again failed to allege the requisite personal involvement to establish a basis for liability against the Defendants. The fact that the Defendants are high-level prison officials generally responsible for running the facility does not adequately allege their personal involvement, whether on an individual or supervisory level. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)); *Figueroa v. Pistro*, Civ. A. No. 21-0041, 2021 WL 601096, at *4 (E.D. Pa. Feb. 16, 2021) (dismissing *Bivens* claims for failure to allege personal involvement where "other than being identified as the Warden at the Philadelphia FDC, there is no other mention of Pistro in Figueroa's Complaint"). For these reasons, Adames's *Bivens* claims for unconstitutional punishment and deliberate indifference to medical needs based on the fact he contracted COVID-19 fail.

### B. Allegations Related to Medical Treatment or Other Conditions

Although the primary focus of this lawsuit has been the response to COVID-19 at FDCP and the fact that Adames contracted COVID-19 during his incarceration there, the letters attached to the TAC introduce allegations about additional events. The letters (one of which duplicates a letter previously addressed by the Court) describe: (1) events that took place in

---

[7] Although it is impermissible for the Court to amalgamate allegations in superseded pleadings, *see Argentina*, 778 F. App'x at 175 n.3, the Court notes that the superseded Second Amended Complaint describes various measures taken at FDCP to address the COVID-19 pandemic, albeit measures with which Adames disagrees. (ECF No. 15 at 7-9.)

October 2020 when Adames's cell was flooded with urine and feces for a period of time and related consequences; and (2) Adames's description of various medical conditions from which he suffers and his generalized allegation that the medical care at the FDCP is insufficient.

As noted above, to state a claim for unconstitutional conditions, a detainee must allege that the challenged conditions amounted to punishment, either because they are intended to punish or because they equate to an excessive response to address a legitimate government objective.[8]  *Bell v. Wolfish*, 441 U.S. 520, 537-38 (1979).  To state a claim in the context of medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer*, 511 U.S. at 835.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

---

[8] It is unclear whether a *Bivens* remedy exists for a federal prisoner to challenge his conditions of confinement apart from conditions related to medical needs or violence from another inmate.  In a recent non-precedential opinion, the majority declined to imply a "cause of action to sue federal prison officials for unconstitutional conditions of confinement," *Mammana v. Barben*, 856 F. App'x 411, 415 (3d Cir. 2021), over the dissent of Judge Shwartz, who concluded that a federal prisoner could sue a corrections officer "based upon inhumane conditions of confinement that violate the Eighth Amendment right to be free from cruel and unusual punishment." *Id.* at 416 (Shwartz, dissenting).

Nothing in Adames's allegations describes how Warden Pistro or the John Doe Health Services Administrator were personally involved in the events described in Adames's letters. Furthermore, Adames's allegations are highly generalized. Although he alleges various medical needs, he has failed to allege facts from which one could plausibly infer that any employees at FDCP were deliberately indifferent to those needs. Accordingly, Adames has also failed to state a plausible claim based on these additional events.

### IV.    CONCLUSION

For the reasons stated, the Court will dismiss Adames's TAC for failure to state a claim. Despite having been given multiple opportunities to amend, Adames has failed to state a plausible claim against the Defendants. Accordingly, the Court concludes that further attempts to amend would be futile.[9] *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story"). An Order follows, which dismisses this case with prejudice.

> BY THE COURT:
>
> /s/Petrese B. Tucker
> _____
> **PETRESE B. TUCKER, J.**

---

[9] The Court reaches the conclusion that further amendment would be futile even taking into consideration the allegations of the Second Amended Complaint. However, to the extent Adames intends to pursue claims: (1) against other Defendants – not Pistro and the John Doe Health Services Administrator – based on the events of October 2020, when sewage leaked into his cell, or (2) based on matters apart from the COVID-19 response at FDCP, the Court does not consider those claims to have been part of this lawsuit. Adames may reassert these claims in a new lawsuit, and the Court takes no position on the merits of any additional claims Adames might pursue based on his experiences at FDCP. If Adames chooses to do proceed in this manner by filing a new lawsuit, he must also either pay the applicable fees or seek leave to proceed *in forma pauperis*. He may not, however, file any further amended complaints in this case.